UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL RAVICHER, <br><br> Plaintiff, <br><br> v. <br><br> BANK OF AMERICA CORPORATION, JPMORGAN CHASE & CO., and WELLS FARGO & COMPANY, all Delaware corporations, <br><br> Defendants. | ECF CASE <br><br> CASE NO. _____ <br><br> **COMPLAINT** |

Plaintiff Daniel Ravicher alleges, upon knowledge as to self and upon information and below as to others, against Defendants BANK OF AMERICA CORPORATION ("BAC"), JPMORGAN CHASE & CO. ("JPM"), and WELLS FARGO & COMPANY ("WFC") as follows:

## NATURE AND SUMMARY OF THE ACTION

1.  Defendants are aiding and abetting one of the largest frauds in history by continuing to provide a critical line of credit to Herbalife Ltd. ("HLF") after knowing that HLF is an illegal pyramid scheme. Defendants' illegal conduct has caused and is continuing to cause injury to Plaintiff's substantial investment in a short position in HLF. Plaintiff brings this action against Defendants for damages and to enjoin any further aiding and abetting of the HLF fraud.

## PARTIES

2.  Plaintiff is a citizen of the great state of Florida. Plaintiff has had and continues to have a substantial investment in a short position in HLF.

3.  Defendant BAC is a Delaware corporation with its principal executive offices in

Case 1:13-cv-03908-LLS   Document 1   Filed 06/07/13   Page 2 of 9

Ravicher v. Bank of America Corporation, et al.  
COMPLAINT

June 7, 2013  
Page 2

Charlotte, North Carolina.

4. Defendant JPM is a Delaware corporation with its principal executive offices in New York, New York.

5. Defendant WFC is a Delaware corporation with its principal executive offices in San Francisco, California.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over the claim asserted herein pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiff and Defendants and the amount in controversy exceeds $75,000.

7. The Court has jurisdiction over each Defendant because they either are citizens of New York, New York, or have sufficient minimum contacts with New York so as to render the exercise of jurisdiction by the New York courts permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because one or more of the Defendants either resides in or maintains executive offices in this District and defendants regularly conduct business in this District and/or have received compensation in this District by engaging in numerous activities and conducting business here that had an effect in this District.

## SUBSTANTIVE ALLEGATIONS

### *Herbalife's Fraudulent Pyramid Scheme*

9. Herbalife Ltd. ("HLF") describes itself as "a network marketing company [that] sells weight management, healthy meals and snacks, sports and fitness, energy and targeted nutritional products, and personal care products worldwide." In truth, HLF is a fraudulent pyramid scheme because it has a compensation program based primarily on providing payments to participants for the recruitment of new participants, not on the retail sale of products or services.

10. As described by the Ninth Circuit:

> Pyramid schemes are said to be inherently fraudulent because they must eventually collapse. *See, e.g., S.E.C. v. International Loan Network, Inc.*, 968 F.2d 1304, 1309 (D.C.Cir. 1992). Like chain letters, pyramid schemes may make money for those at the top of the chain or pyramid, but "must end up disappointing those at the bottom who can find no recruits." *In re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106, 1181 (1975), *aff'd mem. sub nom., Turner v. F.T.C.*, 580 F.2d 701 (D.C.Cir.1978).
>
> The Federal Trade Commission has established a test for determining what constitutes a pyramid scheme. Such contrivances
>
>> are characterized by the payment by participants of money to the company in return for which they receive (1) the right to sell a product and (2) the right to receive in return for recruiting other participants into the program rewards which are unrelated to sale of the product to ultimate users.
>
> *Id.* (emphasis in original). The satisfaction of the second element of the *Koscot* test is the *sine qua non* of a pyramid scheme: "As is apparent, the presence of this

*Ravicher v. Bank of America Corporation, et al.*  June 7, 2013
COMPLAINT  Page 4

> second element, recruitment with rewards unrelated to product sales, is nothing more than an elaborate chain letter device in which individuals who pay a valuable consideration with the expectation of recouping it to some degree via recruitment are bound to be disappointed." *Id.* We adopt the *Koscot* standard here and hold that the operation of a pyramid scheme constitutes fraud for purposes of several federal antifraud statutes.

*Webster v. Omnitrition Intern., Inc.*, 79 F. 3d 776, 781-82 (9th Cir 1996).

11. With respect to HLF specifically, the United States District Court for the Central District of California found in 2009 that, "Herbalife's entire business model appears to incentivize primarily the payment of compensation that is 'facially unrelated to the sale of product to the ultimate users' because it is paid based on the suggested retail price of the amount ordered [from Herbalife], rather than based on actual sales to consumers.'" *Herbalife v. Ford*, Memorandum & Order Regarding Cross-Motions for Summary Judgment, No. CV 07-02529, slip op. at 16 (C.D. Cal. Aug. 25, 2009). Thus, this factual finding by the California state court satisfies the Ninth Circuit's description of a pyramid scheme, meaning HLF is indeed, without question, a fraud.

12. HLF has also been found to be a pyramid by a Belgian court. Plaintiff is aware of no case where HLF has been found to not be a pyramid scheme and HLF has not published any independent attorney opinion on the issue. Instead, HLF uses misleading, scientifically unsound reports by hired-gun experts who are not attorneys to distract and confuse the public regarding the legality of its business model.

*Ravicher v. Bank of America Corporation, et al.*                          June 7, 2013
COMPLAINT                                                                                                                      Page 5

13. In short, HLF's pyramid scheme constitutes a fraud in violation of federal law, including Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), § 12(2) of the Securities Act of 1933, § 10 of the Securities Exchange Act of 1934 and/or various RICO predicate acts, amongst others. HLF's business also violates various state and international laws.

### *Defendants' Aiding and Abetting the Herbalife Fraud*

14. In order to commit its fraud, HLF needs credit. Related thereto, on March 9, 2011, HLF issued a press release titled, "HERBALIFE LTD ANNOUNCES NEW $700 MILLION CREDIT FACILITY," that stated:

> LOS ANGELES, March 9, 2011 — Herbalife Ltd (NYSE: HLF) today announced that it has entered into a new $700 million senior secured revolving credit facility.
>
> The new five year facility matures on March 9, 2016. This new facility was arranged by Bank of America Merrill Lynch and JP Morgan Securities LLC as joint lead arrangers and joint book managers. Banks included in the new facility are Bank of America N.A. as Administrative Agent, JP Morgan Chase Bank N.A. as Syndication Agent and Rabobank International as Documentation Agent. Other participating lenders include HSBC, Key Bank, Union Bank, Wells Fargo Bank, ING and Comerica. The new facility replaces a $300 million senior secured credit facility entered into in July 2006 that was originally comprised of a $100 million revolving credit facility (which was later amended in 2007 to increase the revolver capacity by $150 million to $250 million) and a $200 million term loan due to expire in 2012 and 2013, respectively.

15. As disclosed in the March 9, 2011, press release, Defendants BAC and JPM were the joint lead arrangers and joint book managers for the new credit facility, while Defendant WFC was another participating lender.

16. The new credit facility announced on March 9, 2011, was more than twice the

size of the previous credit facility. By touting the new line of credit so broadly, HLF conceded it was extremely material to their business.

17. Then, not even a year and a half later, HLF needed to increase its credit limit even further in order to keep its fraud from collapsing. To wit, on July 30, 2012, HLF issued a press release that said in part:

> LOS ANGELES-- ...
>
> Announces a New $500 million Term Note Added to its Credit Facility
>
> The company amended its credit facility to add a new $500 million term loan to the existing $700 million senior credit facility entered into in March 2011. This new facility was arranged by Bank of America Merrill Lynch with RaboBank, HSBC and Wells Fargo as joint lead arrangers and joint book managers.

18. Defendant BAC was again a lead arranger and book manager for this additional half a billion dollar line of credit, but this time Defendant WFC was the joint lead arranger and joint book manager, not Defendant JPM.

19. While the defendants cannot be blamed for playing an unwitting role in HLF's fraud, on February 5, 2013, Plaintiff sent a letter to the CEO and General Counsel of each of Defendants BAC, JPM and WFC describing the HLF fraud and their role therein. Plaintiff identified himself as an attorney in the letters. Plaintiff also described in the letters the HLF fraud and each Defendants' role therein. Plaintiff then closed each letter by asking each Defendant to withdraw its involvement with the HLF fraud, and particularly withdraw the critical line of credit

*Ravicher v. Bank of America Corporation, et al.*          June 7, 2013
COMPLAINT          Page 7

extended thereto.

20. Plaintiff's letters were sent by Priority Mail with delivery confirmation and the United States Postal Service confirms that each letter was delivered on February 7, 2013. Thus, by at least February 7, 2013, Defendants had actual knowledge of the HLF fraud and their continued involvement therein after at least that date was no longer unwitting.

21. A party is guilty of aiding and abetting a fraud if (1) there is a fraud, (2) the party has knowledge of the fraud, and (3) the party provides substantial assistance to advance the fraud's commission. The knowledge requirement of an aiding and abetting fraud claim is satisfied by actual knowledge of the underlying fraud. A party provides "substantial assistance" to advance of a fraud's commission if it affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed.

22. No latter than February 7, 2013, Defendants began illegally aiding and abetting the HLF fraud because (1) HLF is a fraud, (2) Plaintiff provided them with actual knowledge received February 7, 2013, of HLF's fraud, and (3) they nonetheless continue to provide "substantial assistance" to the HLF fraud through the maintenance of the critical line of credit thereto.

*Defendants' Illegal Conduct Has Injured Plaintiff*

23. Knowing that HLF is a fraudulent pyramid scheme, Plaintiff has established and maintains a substantial short position in HLF stock. By aiding and abetting the HLF fraud,

including by maintaining the critical line of credit thereto, Defendants have illegally caused the HLF share price to be unjustifiably inflated, which has negatively impacted the value of Plaintiff's investment.

24. But for Defendants' conduct, Plaintiff's investment in a short position in HLF would be worth substantially more. The Defendants are also aware that the line of credit they extend to HLF is used, at least in part, to repurchase shares of HLF, causing the HLF share price to rise, and, as a direct consequence, the value of any short position in HLF to fall. Thus, Defendants' illegal conduct is both an actual and proximate cause of Plaintiff's injury.

## COUNT I

### Against Defendants for Aiding and Abetting a Fraud

25. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

26. Defendants have aided and abetted the HLF fraud, and continue to do so, by maintaining the critical line of credit thereto with knowledge of HLF's fraudulent activities.

27. Plaintiff has been damaged, and continues to be damaged, thereby.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court enter judgment as follows:

A. Permanently enjoin Defendants from continuing to aid and abet the HLF fraud in any manner, including by maintaining the critical line of credit thereto.

B. Award Plaintiff his damages from Defendants' aiding and abetting the HLF fraud.

C. Award Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses.

D. Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: June 7, 2013
New York, New York

Respectfully Submitted,

RAVICHER LAW FIRM

Daniel B. Ravicher, Esq. (DR0843)
2000 Ponce De Leon Blvd, Ste 600
Coral Gables, Florida 33134
(786) 505-1205
dan@ravicher.com