UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL RAVICHER,<br><br>        Plaintiff,<br><br> v.<br><br>BANK OF AMERICA CORPORATION,<br>JPMORGAN CHASE & CO., and<br>WELLS FARGO & COMPANY,<br><br>        Defendants. | CASE NO. 1:13-cv-03908-LLS<br><br><br>ECF CASE |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

Daniel B. Ravicher
RAVICHER LAW FIRM
2000 Ponce De Leon Blvd, Ste 600
Coral Gables, Florida 33134
Tel: (786) 505-1205
Fax: (212) 591-6038
Email: dan@ravicher.com

## TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................................................i

TABLE OF AUTHORITIES....................................................................................................ii

I.     PLAINTIFF HAS NOT ONLY ADEQUATELY PLEAD A CLAIM FOR AIDING AND ABETTING THE HERBALIFE FRAUD, HE HAS ALREADY PROVEN IT..................1

    A.     Herbalife Is A Fraud........................................................................................2

    B.     Defendants Have Actual Knowledge Of The Herbalife Fraud................................5

    C.     Defendants Are Providing Substantial Assistance To The Herbalife Fraud............7

CONCLUSION............................................................................................................................9

## TABLE OF AUTHORITIES

**CASES**

*Fidelity Funding of Calif., Inc. v. Reinhold*,
    79 F.Supp.2d 110 (E.D.N.Y. 1997)......................................................................................2

*Herbalife v. Ford*,
    No. CV 07-02529, slip op. (C.D. Cal. Aug. 25, 2009)..............................................*passim*

*In re Koscot Interplanetary, Inc.*,
    86 F.T.C. 1106 (1975).................................................................................................3

*JP Morgan Chase Bank v. Winnick*,
    406 F. Supp. 2d 247 (S.D.N.Y. 2005)..........................................................................2, 8

*Koppel v. 4987 Corp.*,
    1999 U.S. Dist. LEXIS 12340 (S.D.N.Y. Aug. 11, 1999)....................................................5

*S.E.C. v. International Loan Network, Inc.*,
    968 F.2d 1304 (D.C.Cir. 1992)....................................................................................3

*Test-Aankoop v. Herbalife International Belgium [Comm. Ct. Brussels]*,
    Nov. 23, 2011, AR 2004/7787, No. JC-DC/27 (Belgium)...........................................4, 5

*Turner v. F.T.C.*,
    580 F.2d 701 (D.C.Cir.1978)......................................................................................3

*Webster v. Omnitrition Intern., Inc.*,
    79 F. 3d 776 (9th Cir 1996).......................................................................................3

*Wight v. BankAmerica Corp.*,
    219 F.3d 79 (2d Cir. 2000).........................................................................................1

Defendants do not dispute that they have extended a $1.2B line of credit to Herbalife, that they are aware of Herbalife's business practices, or that their line of credit is being used by Herbalife to keep its fraud afloat. Instead, Defendants move to dismiss Plaintiff's claim for aiding and abetting the Herbalife fraud based on two arguments, neither of which is availing.

First, Defendants argue one can not bring a claim for aiding and abetting of a fraud without also proving a claim against the underlying fraud, but this is not the law. All that Plaintiff must show for an aiding and abetting fraud claim is the existence of an underlying fraud, not that he was injured by it, reasonably relied on it, or otherwise could prove a claim against it. Second, Defendants argue that Herbalife can not be a "fraud", and thus they can not be held to have knowledge of or be providing substantial assistance to a "fraud", unless and until Herbalife is adjudged a fraud. This is not only not the law, it ignores the fact that Herbalife has indeed already been adjudged a fraud by a Belgian court and that the Central District of California determined there was at least a triable issue of fact on the question.

After reviewing the matter, Plaintiff believes the Court will agree that Defendants' motion to dismiss the complaint should be denied. Indeed, Plaintiff intends to move for summary judgment on liability as soon as the Court allows, leaving only damages for discovery and trial.

### I.   PLAINTIFF HAS NOT ONLY ADEQUATELY PLEAD A CLAIM FOR AIDING AND ABETTING THE HERBALIFE FRAUD, HE HAS ALREADY PROVEN IT

"[A] claim for aiding and abetting fraud requires plaintiff to plead facts showing 'the existence of a fraud, defendant's knowledge of the fraud, and that the defendant provided substantial assistance to advance the fraud's commission.'" *Wight v. BankAmerica Corp.*, 219

1

F.3d 79, 91 (2d Cir. 2000) (*quoting Fidelity Funding of Calif., Inc. v. Reinhold*, 79 F.Supp.2d 110, 122 (E.D.N.Y. 1997)). "The knowledge requirement of an aiding and abetting fraud claim is satisfied by alleging actual knowledge of the underlying fraud." *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 252 (S.D.N.Y. 2005) (citation omitted). "A defendant provides substantial assistance only if [it] affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables [the fraud] to proceed." *Id*. at 256 (internal quotation marks omitted).

Defendants here are aiding and abetting a fraud because (1) Herbalife is a fraud, (2) Defendants have actual knowledge of Herbalife's fraud both as a result of their Credit Agreement with the company and their receiving notice of such from Plaintiff, and (3) Defendants are providing "substantial assistance" to the Herbalife fraud by continuing to maintain a $1.2B line of credit. Thus, each of the three prongs of Plaintiff's claim against the Defendants is not only adequately alleged, they are each satisfied.

### A.     Herbalife Is A Fraud

Herbalife Ltd. describes itself as a multi-level marketing company that distributes nutritional products and personal care products throughout the world via a vast network of independent distributors. Compl. at ¶ 9. In truth, Herbalife is a fraudulent pyramid scheme because it has a compensation program based primarily on providing payments to distributors for the recruitment of new distributors, not on the retail sale of products or services. *Id*.

As described by the Ninth Circuit:

>Pyramid schemes are said to be inherently fraudulent because they must eventually collapse. *See*, *e.g.*, *S.E.C. v. International Loan Network, Inc.*, 968 F.2d 1304, 1309 (D.C.Cir. 1992). Like chain letters, pyramid schemes may make money for those at the top of the chain or pyramid, but "must end up disappointing those at the bottom who can find no recruits." *In re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106, 1181 (1975), *aff'd mem. sub nom.*, *Turner v. F.T.C.*, 580 F.2d 701 (D.C.Cir.1978).
>
>The Federal Trade Commission has established a test for determining what constitutes a pyramid scheme. Such contrivances
>
>>are characterized by the payment by participants of money to the company in return for which they receive (1) the right to sell a product and (2) the right to receive in return for recruiting other participants into the program rewards which are unrelated to sale of the product to ultimate users.
>
>*Id*. (emphasis in original). The satisfaction of the second element of the *Koscot* test is the *sine qua non* of a pyramid scheme: "As is apparent, the presence of this second element, recruitment with rewards unrelated to product sales, is nothing more than an elaborate chain letter device in which individuals who pay a valuable consideration with the expectation of recouping it to some degree via recruitment are bound to be disappointed." *Id*. We adopt the *Koscot* standard here and hold that the operation of a pyramid scheme constitutes fraud for purposes of several federal antifraud statutes.

*Webster v. Omnitrition Intern., Inc.*, 79 F. 3d 776, 781-82 (9th Cir 1996).

>With respect to Herbalife specifically, the Central District of California wrote:
>
>[I]n the Court's view, Herbalife's entire business model appears to incentivize primarily the payment of compensation that is "facially unrelated to the sale of product to the ultimate users because it is paid based on the suggested retail price of the amount ordered [from Herbalife], rather than based on actual sales to consumers."

*Herbalife v. Ford*, Memorandum & Order Regarding Cross-Motions for Summary Judgment, No. CV 07-02529, slip op. at 16 (C.D. Cal. Aug. 25, 2009) (*citing Omnitrition*, 79 F.3d at 782).

3

Thus, a sister court believes Herbalife's business model appears to satisfy the Ninth Circuit's description of a pyramid scheme. While Defendants correctly point out that the California court denied summary judgment on the issue, finding there was a triable issue of fact (Def. Br. at 7), this was merely because the court there had to assume all factual assertions in Herbalife's favor, even if tenuous and strained. Here, on a motion to dismiss, the Court is to do the exact opposite, and construe disputed facts in Plaintiff's favor. Thus, the fact that *Ford* did not grant summary judgment for Herbalife, and indeed found there was a triable question of whether Herbalife is a fraud, is more than sufficient to satisfy Plaintiff's pleading requirements on the issue.

Further, Herbalife has been found to be an illegal pyramid scheme by a Belgian court. *Test-Aankoop v. Herbalife International Belgium* [Comm. Ct. Brussels], Nov. 23, 2011, AR 2004/7787, No. JC-DC/27 (Belgium) (Original decision and English translation available at http://factsaboutherbalife.com/category/herbalife-case-law/belgium-decision-2004-2011/) ("The court states that Herbalife is in breach of Articles 91, 4 and 99 of the Act regarding market practises and consumer protection because it has established, managed or promoted a pyramid scheme, whereby the consumer or a business stands to make money which is more likely the result of introducing new consumers or businesses into the scheme than from the sale or use of products.").

Thus, the Court may take judicial notice of the existence of either or both of these cases in order to satisfy the required pleading of the first element of Plaintiff's aiding and abetting claim against Defendants. Notably, in discussing Herbalife, Defendants fail to offer any evidence

4

that Herbalife's business model is any different than it was in *Ford* or *Test-Aankoop*. Thus, Defendants do not dispute the existence of two separate legal adjudications that Herbalife either is a fraud or there is a triable issue on the question.

Defendants argue Plaintiff has not alleged "reasonable reliance" on the fraud. Defs. Br. at 8 (*citing Koppel v. 4987 Corp.*, 1999 U.S. Dist. LEXIS 12340 (S.D.N.Y. Aug. 11, 1999). However, no case cited by Defendants requires reasonable reliance on an underlying fraud in order for a plaintiff to have a claim for aiding and abetting a fraud. Indeed, the *Koppel* case cited by Defendants is not even an aiding and abetting fraud case. Thus, it is entirely inapplicable. All Plaintiff must allege for a claim of aiding and abetting a fraud is that Herbalife is a fraud, which Plaintiff has done through citation of the California and Belgian opinions. Thus, reference to those judicial findings sufficiently pleads the first "existence of a fraud" prong of Plaintiff's aiding and abetting claim.

### B. Defendants Have Actual Knowledge Of The Herbalife Fraud

Defendants have extended a $1.2B line of credit to Herbalife. Compl. at ¶¶ 14-18. They did this in two stages. First, in March 2011, Defendants extended $700M of credit to the fraud and then, in July 2012, they increased that line of credit by another $500M. *Id.*[1] In the Credit Agreement, the *Ford* case was specifically discussed. Herbalife May 2, 2011 10-Q, Exhibit

---

1 The March 9, 2011, Credit Agreement is attached as Exhibit 10.58 to Herbalife's May 2, 2011, 10-Q filing, and available from the SEC's EDGAR system at http://1.usa.gov/16LUWmK. The July 26, 2012, First Amendment to Credit Agreement is attached as Exhibit 10.54 to Herbalife's July 30, 2012, 10-Q filing, and available from the SEC's EDGAR system at http://1.usa.gov/16ekICS.

10.58, Schedule 5.06. Therefore, Defendants were aware of that litigation and the court opinion referenced above as of at least the time they entered into the Credit Agreement with Herbalife.

In addition, prior to the filing of this complaint, Plaintiff sent letters to the CEO and General Counsel of each Defendant describing the HLF fraud and their roles therein. Compl. at ¶¶ 19-20. Plaintiff identified himself as an attorney in the letters and described the HLF fraud and each Defendants' role therein. *Id*. Defendants concede they received these letters. Def. Br. at 10. Thus, prior to the filing of this action, Defendants had actual knowledge of the HLF fraud upon receipt of the letters notifying them of such from Plaintiff.

Further, Plaintiff noted in his letters that he was a shareholder in each Defendant and, on that basis, asked each Defendant to withdraw the Herbalife line of credit. When each Defendant failed to do as Plaintiff requested, Plaintiff filed a shareholder derivative suit against each Defendant in this court. *Ravicher v. Moynihan, et al.*, 13-cv-01665-LLS (filed March 13, 2013) (copies of Plaintiff's letters to each Defendant are attached as exhibits to the *Moynihan* complaint, Dkt. 1). Plaintiff's *Moynihan* complaint set forth even more facts showing that Herbalife is a fraud and how each Defendant is aiding and abetting it, including by making reference to *Ford* and the Belgium decision. Defendants admit they are aware of *Moynihan* and, therefore, have actual knowledge of the complaint filed therein. Def. Br. at 1, fn 1. Therefore, the *Moynihan* complaint provided Defendants even more actual knowledge of the Herbalife fraud.

For these reasons, Defendants must be aware of the same facts about Herbalife's business as set forth in the court opinions above. Indeed, Defendants do not only have actual knowledge

of the actions of Herbalife that constitute illegal fraud, but the Credit Agreement itself proves they are aware of *Ford* expressly. Thus, Defendants not only have actual knowledge of the fraud, they also have actual knowledge of a sister Federal Court finding that Herbalife appears to be a fraud, and that the issue is at least triable and not appropriate for summary judgment (much less dismissal for inadequate pleadings).

Further, here there is indeed a legal adjudication that Herbalife is a fraud, from a Belgian court. Defendants have noticeably failed to introduce any legal opinion to counter these court findings. Thus, Plaintiff has shown that Defendants have actual knowledge of not only Herbalife's business practices that constitute a fraud, but also specific legal adjudications that Herbalife is a fraud or the issue is at least triable. This more than adequately pleads the second "actual knowledge" prong of Plaintiff's aiding and abetting a fraud claim against Defendants.

**C.     Defendants Are Providing Substantial Assistance To The Herbalife Fraud**

Plaintiff alleges in the Complaint that, "[i]n order to commit its fraud, HLF needs credit." Compl. at ¶ 14. Plaintiff also alleges that, in 2011, Defendants provided Herbalife a $700M line of credit, which they then enlarged by an additional $500M in 2012. Compl. at ¶¶ 14-15, 17-18. Plaintiff further alleges in the Complaint that Herbalife has touted the materiality of the line of credit, both originally and as extended, to its business through statements to the public and its investors. Compl. at ¶¶ 14, 17. Defendants do not deny any of these allegations.

Instead, Defendants argue that providing a $1.2B line of credit to Herbalife is not providing "substantial assistance" to the fraud. Defs. Br. at 11. Defendants make this argument

even though the line of credit is so material to Herbalife's business that the Credit Agreement and First Amendment thereto have been filed with the SEC. Further, as of the filing of this memorandum, Herbliafe's entire market capitalization (i.e. it's entire value) is only about $7B, making the $1.2B line of credit equal to roughly 17% of the company. Herbalife does not even expect to make over $1.2B this year, which is expected to be its best ever. See *Herbalife Ltd. Announces Record Second Quarter 2013 and Raises 2013 Earnings Guidance* (July 29, 2013), available at http://ir.herbalife.com/releasedetail.cfm?ReleaseID=781022 (stating Herbalife made only $150M for the second quarter of 2013).

Defendants' argument that providing a $1.2B line of credit to Herbalife is not providing the fraud "substantial assistance" belies logic, common sense, and the standard set forth in *JP Morgan Chase Bank*, which stated "[a] defendant provides substantial assistance only if [she] affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables [the fraud] to proceed." 406 F. Supp. 2d at 256 (internal quotation marks omitted). The line of credit provided by Defendants is both "affirmatively assisting" and "helping to conceal" Herbailfe's fraud by providing it a source of cash from which it can borrow to keep its scheme from collapsing, The fact that the line of credit needs to continually increase (from $300M in 2006, to $700M in 2011, to $1.2B in 2012) is proof itself that Herbalife's business needs more and more credit in order to stay afloat. Without the line of credit, Herbalife will crumble.

Plaintiff has made theses allegations, buttressed with facts, including Herbailfe's press releases and SEC filings, and Defendants have done nothing to rebut them. Defendants have

submitted no declaration from any witness, fact or expert, to opine that the line of credit is not providing "substantial assistance" to Herbalife. Thus, Plaintiff has sufficiently pled the third "substantial assistance" prong of his aiding and abetting fraud claim.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that Defendants' motion to dismiss the complaint be denied.

Dated: September 20, 2013  
      New York, New York

Respectfully Submitted,

/s/ Daniel B. Ravicher  
Daniel B. Ravicher  
RAVICHER LAW FIRM  
1375 Broadway, Suite 600  
New York, NY 10018  
Tel: (646) 470-2641  
Fax: (212) 591-6038  
dan@ravicher.com