# Exhibit 1

**LINK: 393**

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERBALIFE INTERNATIONAL OF AMERICA, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT E. FORD, JULIA A. FORD, BRUCE H. ROTH, NANCY A. ROTH, JEFF ORR, KATHY ORR, DIANNA N. THOMPSON, and JASON FISHER,<br><br>Defendants. | Case No. CV 07-2529 GAF (FMOx)<br><br>MEMORANDUM & ORDER REGARDING HERBALIFE'S MOTION FOR SUMMARY JUDGMENT |

## I.

## INTRODUCTION & BACKGROUND

Herbalife, a direct-sales, multi-level marketing company that markets nutritional, weight-management and personal care products, brought this suit against defendants Robert and Julia Ford, Bruce and Nancy Roth, Jeff and Kathy Orr, Dianna Thompson, and Jason Fisher (collectively, "Defendants"), a group of former Herbalife distributors. In sum and substance, Herbalife contended that various company documents that contain contact and organizational information regarding Herbalife's distributors, and to which Defendants had access as Herbalife distributors, constituted protectable trade secrets. Herbalife alleged that Defendants used those trade secrets to recruit Herbalife distributors to join them at Melaleuca, Inc. ("Melaleuca"), a competing

1  direct-sales company, in violation of a nonsolicitation covenant in Defendants'
2  distributorship agreements. Herbalife specifically claimed that Defendants breached
3  their distributorship agreements, misappropriated trade secrets and engaged in unfair
4  competition.

5  In response to Herbalife's claims, Defendants asserted a number of
6  counterclaims. They alleged that Herbalife operates an illegal pyramid or "endless
7  chain" scheme in violation of California Civil Code § 1689.2, because it provides
8  bonuses to qualified distributors based on the amount of inventory they purchase rather
9  than the amount they sell to nonaffiliated retail customers; this program, they claimed,
10 emphasized and incentivized the recruitment and retention of distributors, rather than
11 the retail sale of Herbalife products.[1] In addition, Defendants claimed that Herbalife
12 intentionally interfered with Defendants' prospective economic advantage and engaged
13 in unfair competition, in violation of the California Unfair Competition Law and False
14 Advertising Laws ("UCL" and "FAL"), by preventing them from recruiting current
15 Herbalife distributors to join Melaleuca. Defendants also claimed that Herbalife made
16 various misrepresentations to induce distributors who otherwise would have joined
17 Melaleuca to remain with Herbalife.

18 The parties conducted extensive discovery and then filed cross-motions for
19 summary judgment; Herbalife sought summary judgment as to all of Defendants'
20 counterclaims, while Defendants sought summary judgment regarding all of Herbalife's
21 claims, as well as their own endless chain scheme, unfair competition, and false
22 advertising counterclaims. (8/25/09 Order, Docket No. 374, at 2.)

---

[1] California Civil Code section 1689.2 provides that:

> A participant in an endless chain scheme, as defined in Section 327 of the Penal Code, may rescind the contract on which the scheme is based, and may recover all consideration paid pursuant to the scheme, less any amounts paid or consideration provided to the participant pursuant to the scheme. In addition, the court may, upon motion, award reasonable attorney's fees to a prevailing plaintiff.

CAL. CIV. CODE § 1689.2.

2

The Court granted both parties' motions in part and denied them in part, leaving only three remaining claims presently in issue. (Id.) First, Defendants were denied summary judgment as to Herbalife's "breach-of-contract and misappropriation claims," and those claims are still pending. (Id.) Second, the Court determined that Defendants' section 1689.2 "endless chain scheme" counterclaim could proceed. There was "a genuine issue as to whether Herbalife distributors must pay Herbalife to become supervisors," and thus, a genuine issue regarding whether Herbalife's business model met "the test for illegal pyramid schemes" established In re Koscot Interplanetary, Inc., 86 F.T.C. 1106, 1181 (1975), aff'd mem. sub. nom., Turner v. F.T.C., 580 F.2d 701 (D.C. Cir. 1978). (Id. at 16, 15.) Because Defendants could "raise their endless-chain-scheme claim as an affirmative defense" to Herbalife's breach of contract and misappropriation claims (Id. at 17 n.4.), the Court did not consider whether, and to what extent, relief would have been available to Defendants had they raised an <u>affirmative</u> endless chain scheme claim.

Although the Court encouraged the parties to settle the matter after its summary judgment ruling, they did not do so. Herbalife now moves for summary judgment a second time and specifically seeks the Court's determination regarding "whether Defendants may pursue an affirmative endless chain scheme claim, or may only use the alleged endless chain scheme as an affirmative defense." (Mot. at 2-3.)[2] Herbalife argues that a ruling on this question will expeditiously resolve the case, because if "the Court holds that Defendants do not have an affirmative claim, the case will end...[and] Herbalife will seek voluntary dismissal of its remaining claims." (Id. at 3.)[3]

---

[2] Defendants decry Herbalife's motion as a "desperate tactic" and state that "Herbalife improperly seeks to bargain with the Court....There is no legal precedent for this improper stratagem." (Opp. at 3.) But the Court previously informed all parties that Herbalife's motion for summary judgment would be considered if settlement discussions were unsuccessful. Resolving the motion is consistent with the Court's obligation to make efficient use of judicial resources, and the issues presented are ripe for decision.

[3] At the hearing in this matter, Herbalife indicated that it would dismiss the breach-of-contract and misappropriation claims **with prejudice**. (Tr. at 25.)

3

As the Court explains below, Defendants have not shown that they are "victims" of the alleged Herbalife "chain scheme" who would be entitled to rescission under Civil Code section 1689.2. Even if the statute could be read to permit Defendants to seek rescission, six of the defendants have not indicated that they are prepared to restore consideration paid to them by Herbalife, and thus cannot complete a necessary step in the rescission process. Two remaining defendants allege they would be entitled to a net recovery from Herbalife upon rescission, but they present no admissible evidence to support their claim and therefore have failed to show a genuine issue of material fact supporting further rescission procedures. Accordingly, Herbalife's motion for summary judgment is **GRANTED**.

## II.
## DISCUSSION

### A. SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Thus, when addressing a motion for summary judgment, the Court must decide whether there exist "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. See id. at 256. Where there is no evidence demonstrating the existence of a genuine issue of material fact, the moving party may prevail simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts...." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

4

**B. PROPRIETY OF THE MOTION**

Defendants first argue that the "instant Motion is simply a disguised attempt to have the Court reconsider portions of its prior ruling and to dismiss" the endless chain scheme claim, "despite the prior ruling that" the claim could be asserted. (Opp. at 4.) But the issues to be addressed in the present motion are fundamentally separate and distinct from the issues the Court addressed in its prior order.

The Court's prior order did not address whether Defendants could assert an affirmative endless chain scheme claim, nor did it examine the possible remedies available in such a situation. Instead, the order provided that "the Court need not now address" Defendants' entitlement to injunctive relief, and reasoned that "Defendants could raise their endless-chain-scheme claim as an affirmative defense to Herbalife's breach-of-contract and misappropriation claims." (Docket No. 374, at 17 n.4.) Because Herbalife's motion seeks to <u>separately</u> test the sufficiency of the endless chain scheme claim, it should not be construed as an improper motion for reconsideration. The Court is considering issues that it expressly reserved during the previous summary judgment proceedings.

Yet even if the present motion were actually seeking reconsideration, the Court would not err in considering it. Indeed, as Herbalife argues, "the possibility of summary judgment remains on the table even after a district court has denied a summary judgment motion....[T]he denial of summary judgment does not preclude a...later grant of summary judgment....[A]llowing a party to file a second motion for summary judgment is logical, and it fosters the just, speedy, and inexpensive resolution of suits." <u>Hoffman v. Tonnemacher</u>, 593 F.3d 908, 911 (9th Cir. 2010) (citing FED. R. CIV. P. 1.) (internal quotation marks omitted); Reply at 2. The Court proceeds to consider the motion on its merits.

**C. DEFENDANTS ARE NOT ENTITLED TO SEEK RESCISSION**

Herbalife argues that it is entitled to summary judgment because: (1) Defendants do not seek rescission, which is the remedy contemplated by the endless chain scheme

5

statute; and (2) to the extent Defendants seek rescission under the statute, they have not "met the requirements to seek rescission." (Mot. at 4; Reply at 5, 7-10.) The Court considers each of these arguments, in turn.

### 1. DEFENDANTS "DO NOT SEEK RESCISSION"

Herbalife first claims that Defendants "do not" even "seek rescission" pursuant to section 1689.2. (Mot. at 4.) Accordingly, because rescission (and related discretionary attorneys' fees) are the only remedies specified by the statute, CAL. CIV. CODE § 1689.2, Herbalife should be granted summary judgment. (Mot. at 4.) In support, Herbalife cites Defendants' contentions memorandum, wherein they indicated that they sought "injunctive relief and damages they sustained because Herbalife is an endless chain (pyramid) scheme." (Def. Mem. Contentions Fact and Law, Docket No. 316, at 23.) Although the memorandum does omit references to the proper statutory remedies, the Court cannot conclude that Defendants wholly abandoned their rescission claim. The first amended counterclaim specifically pleads that "Counterclaimants are entitled to rescission of any of their contract[s] with Herbalife, including...the Distributorship Agreements," pursuant to section 1689.2, and their present opposition consistently alleges that Defendants seek rescission under section 1689.2. (Docket No. 98, ¶¶ 52-53.) The rescission claims have not been waived.

### 2. DEFENDANTS ARE NOT "VICTIMS" ENTITLED TO RESCISSION UNDER CIVIL CODE SECTION 1689.2

Nevertheless, to find that Defendants have not abandoned their rescission claims is not to conclude that they are actually entitled to rescission. Upon reading and considering section 1689.2's legislative history, the Court concludes that the legislature did not intend the rescission and attorneys-fees remedies to benefit individuals in Defendants' current position vis à vis Herbalife. (Def. Reply Req. Jud. Not., Docket No. 420, Ex. A.) In particular, the legislative history indicates that the civil endless chain scheme provision was aimed at <u>victims</u> of illegal endless schemes, not other "participants" who profited from the schemes.

6

Of particular note is the evidence that, within a week before Governor Deukmejian signed the legislation enacting section 1689.2, the Attorney General's office informed him that the law was intended to "make explicit the right of a <u>victim</u> of a pyramid scheme to rescind the contract on which it is based and to recover his or her <u>losses</u>. Although this remedy is generally available under existing statutory and case law, the bill would make the availability of the remedy clear and explicit." (Id. at 88 (emphasis added); 11.) Consistent with these findings, section 1689.2 should be read together with the nearby section 1689, which states that "a party to a contract may rescind...[i]f the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are <u>not</u> equally at fault." CAL. CIV. CODE § 1689(b)(5) (emphasis added).

Turning to the present case, six of the eight defendants (the Fords, the Roths, Jason Fisher, and Kathy Orr) have not submitted <u>any</u> evidence that they lost money during the course of their Herbalife distributorships. The only reasonable conclusion is that these defendants either profited from their participation or obtained a net-zero return while establishing significant downline Herbalife distributors. In either case, they are not Herbalife's "victims," nor can they show that they are "not equally at fault" with Herbalife in furthering the progress of the alleged "endless chain" scheme. <u>Id.</u>; Def. Reply Req. Jud. Not., Ex. A, at 88. Thus, under a harmonious reading of the legislative history of section 1689.2 and the related section 1689, the Court cannot conclude that these six defendants are entitled to rescission. The Court **GRANTS** Herbalife's motion as to the Roths, the Fords, Jason Fisher, and Kathy Orr's section 1689.2 counterclaims.

Two other defendants, Jeff Orr and Dianna Thompson, contend that they actually lost money or property during the course of their Herbalife distributorships. But even if these defendants had presented evidence sufficient to create a genuine issue of material fact regarding their monetary losses (and, as discussed below, they have not), the Court cannot conclude that there is any equitable justification for ordering

7

rescission and altering the parties' present status. The record suggests that Orr and Thompson left Herbalife not because they felt victimized but rather because they felt that they could do even better working with a competitor. Orr and Thompson left Herbalife specifically to sign up with a competing product sales and distributorship program, Melaleuca, and they recruited their Herbalife downline distributors to join them there. (Gates Decl. Opp. Mot. Summ. J., Docket No. 261, Ex. N [Thompson Depo. Tr. at 236:20-237:24]; Id., Ex. F [J. Orr Depo. Tr. at 219:7-10.].) These facts indicate that Orr and Thompson, as former Herbalife supervisors, sought to use the distribution and management skills developed during their tenure with Herbalife to further their careers in a similar organization. In these circumstances, the Court finds no equitable grounds for granting rescission, which would be inconsistent with the statute's remedial purposes.

**D. ALTERNATIVE GROUNDS FOR SUMMARY JUDGMENT**

Even if, the Court assumes, arguendo, that the defendants could somehow be considered "victims" or intended beneficiaries of California legislature's endless-chain-scheme statute, their counterclaims still fail.

**1. CALIFORNIA LAW BARS RESCISSION CLAIMS BY THE FORDS, THE ROTHS, JASON FISHER, AND KATHY ORR**

In Myerchin v. Family Benefits, Inc., 162 Cal. App. 4th 1526 (2008), the defendant answered a breach of contract claim by claiming that the contract was "unenforceable," and argued before the Court of Appeal that he was entitled to seek rescission. 162 Cal. App. 4th at 1533-34. The court disagreed and held that the defendant could not seek rescission, in part because he admitted in discovery that he "no longer had any of the...money" paid to him under the contract and "was unable to repay it." Id. at 1534.

At the hearing in this matter, counsel for the Fords, the Roths, Jason Fisher, and Kathy Orr indicated that even in the event the Court ordered rescission of their distributorship agreements, they would be unable to restore to Herbalife any net

8

consideration they would owe.[4] Allowing these defendants to proceed with their rescission claims is an empty and inappropriate exercise when they admit they cannot, in any event, "restore to [Herbalife] everything of value which [they have] received from [Herbalife] under the contract." CAL. CIV. CODE § 1691. Accordingly, Herbalife is **GRANTED** summary judgment as to these six defendants' section 1689.2 counterclaims, under Myerchin and Civil Code section 1691.

## 2. JEFF ORR AND DIANNA THOMPSON'S RESCISSION CLAIMS ALSO FAIL

### a. Jeff Orr

Defendant Jeff Orr does contend that, on balance, he lost money by participating in Herbalife. According to Herbalife's records, Orr paid Herbalife $129,376.59 for its products. (Confidential Oliver Decl., Docket No. 401, Ex. C, at 54.) Orr reviewed these records and accepts this initial figure as money paid "for product orders" (J. Orr Decl. ¶ 3.), but alleges that Herbalife paid him only "about $60,000" in return. (Id. ¶ 4.) Orr bases this conclusion on the fact that he "received royalties and commissions from Herbalife" and that he "received statements from Herbalife that detailed the amount of money that [he] received." (Id.) He thus concludes that Herbalife owes him approximately $69,000 in net-positive consideration. (Id. ¶¶ 2, 5.)

While Orr's arithmetic is correct, his conclusion is inadmissible. None of the personal statements and records upon which Orr relies is submitted to support his testimony and specifically confirm the amount Herbalife paid to him. Absent any records to support the assertion that he received only "about $60,000" in Herbalife payments (Id. ¶ 4.) or any acceptable explanation for why they cannot be produced, Orr's conclusion that he is entitled to a net-positive return is properly excluded under the Best Evidence Rule. See FED. R. EVID. 1002; 1004.

---

[4] At the motion hearing, the Court stated that Kathy Orr had "substantial net consideration" in her "favor," and asked Kathy Orr's counsel if she was "prepared to give all that back." Counsel responded that the "answer is no." (Hearing Tr. at 11.) Counsel for the Fords, the Roths, and Jason Fisher stated that "[t]hrough no fault of my clients, they're not able to return the product or return millions of dollars or hundreds of thousands of dollars." (Hearing Tr. at 20.)

Because Orr has not submitted admissible evidence indicating he would be entitled to receive net consideration <u>from</u> Herbalife, the Court concludes that proceeding with Orr's rescission counterclaim is an empty and inappropriate exercise, and **GRANTS** summary judgment to Herbalife on this alternative ground.[5]

### b. *Dianna Thompson*

Defendant Dianna Thompson's rescission counterclaim fails for similar reasons. Thompson claims that she "paid Herbalife at least $189,250.87 between January 31, 1997 and January 17, 2007," (Thompson Decl. ¶ 3.) as reflected in Herbalife's records. (Confidential Oliver Decl., Ex. F, at 105.) She further claims that she paid Herbalife an additional $500,000 between 1984 and 1996 (Thompson Decl. ¶ 4.), and thus testifies that "between 1984 and 2007," she paid "at least $689,250.87" in consideration to Herbalife. (<u>Id.</u>) Herbalife, in turn, allegedly paid her only "about $215,000," and she bases this contention on "received royalties and commissions" and "received statements from Herbalife that detailed the amount of money that I received." (<u>Id.</u> ¶ 5.) Accordingly, she concludes, "I paid about $474,250.87 more to Herbalife than Herbalife paid to me." (<u>Id.</u> ¶ 6.) The Herbalife statements on which she relies have not been produced.

Even if the Court accepts Thompson's testimony to establish that she paid $689,250.87 <u>to</u> Herbalife, she (like Orr) has failed to present any of the statements or other records upon which she relies in alleging that a mere $215,000 was paid <u>by</u> <u>Herbalife</u> to her during her distributorship. Because this testimony likewise violates the Best Evidence Rule, <u>see</u> FED. R. EVID. 1002, 1004, there is no admissible evidence

---

[5] Orr's claims regarding his entitlement to rescission also lack merit because he "relies on purchases he made under his distributor number, ignoring his own sworn testimony that he and his wife operated a joint business." (Reply at 6; Confidential Gates Decl., Docket No. 269, Ex. 6, at 26 [Kathy Orr earnings summary]; Reply Gates Decl., Docket No. 417, Ex. A, at 3-4 [J. Orr. Deposition] ("Q. Did you consider yourselves to have two separate businesses or one joint business? A. I think sometimes it was more complicated to have two. I would say joint. To answer your question, joint. Q. Were you two working together to work the business or were you each working separately on your own businesses? A. No, we worked together as much as we could."))

10

before the Court indicating that Thompson would be entitled to receive net-positive consideration from Herbalife. Accordingly, proceeding with Thompson's rescission claim is also inappropriate, and summary judgment is **GRANTED** to Herbalife on this alternative ground.

### III.
### CONCLUSION

Consistent with the foregoing reasoning, the Court **GRANTS** Herbalife's motion for summary judgment regarding the defendants' Civil Code section 1689.2 counterclaims. Herbalife is **ORDERED** to prepare and submit, no later than May 14, 2010, a proposed judgment consistent with this order.

**IT IS SO ORDERED.**

DATED: May 5, 2010

_____
Judge Gary Allen Feess
United States District Court

11